IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW HEAD,                                                    CV 02-373-RE

        Plaintiff,                                              OPINION AND ORDER

v.

GLACIER NORTHWEST,
INCORPORATED, a Washington
Corporation,

        Defendant.

REDDEN, Judge.

      This matter is before the court on defendant's motion for a new trial (doc. 169) pursuant to Fed. R. Civ. P. 59(a). For the following reasons, the court **DENIES** defendant's motion.

1 - OPINION AND ORDER

## BACKGROUND

Plaintiff brought this action under the federal Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and its Oregon counterpart, Ore. Rev. Stat. § 659A.006 et seq. Plaintiff alleged he suffers from a disabling bi-polar disorder. He alleged defendant terminated his employment after plaintiff damaged one of defendant's loaders when he got it stuck in the mud. Plaintiff alleged motivating factors in defendant's decision to terminate him were (1) plaintiff's disability, and/or (2) plaintiff's request for a reasonable accommodation. Plaintiff sought economic, non-economic, and punitive damages.

Defendant answered that plaintiff was terminated solely because he violated defendant's equipment abuse policy.

After a four-day trial, the jury found (1) plaintiff is disabled, (2) his disability was not a motivating factor in defendant's decision to terminate him, but (3) plaintiff's request for a reasonable accommodation was a motivating factor in the termination decision. The jury awarded plaintiff $60,000 economic damages (wage loss), and $100,000 non-economic damages (emotional distress). The jury did not award punitive damages.

## STANDARDS

Under Fed. R. Civ. P. 59(a), "even if substantial evidence supports the jury's verdict, a trial court may grant a new trial if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

"The judge can weigh the evidence and assess the credibility of witnesses, and

need not view the evidence from the perspective most favorable to the prevailing party."
Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987)
"If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial." Id. at 1371-72.

The court also has the discretion to order a new trial on the basis of an incorrect evidentiary ruling if the ruling substantially prejudiced a party. U.S. v. 99.66 Acres of Land, 970 F.2d 651, 658 (9th Cir. 1992).

## DISCUSSION

Defendant argues (1) the verdict is against the clear weight of the evidence, and (2) the court improperly excluded defendant's evidence that the damage to the loader was so extensive that the loader is no longer in use.

### I. Weight of the Evidence.

**Direct v. Circumstantial Evidence.**

Defendant argues plaintiff presented no direct evidence of a discriminatory motive by defendant to retaliate against him because he requested a reasonable accommodation for his bi-polar disorder. In addition, defendant argues any circumstantial evidence plaintiff presented as to a discriminatory motive was not sufficiently specific and substantial. See Fallar v. Compuware Corp., 202 F.Supp.2d 1067,1081-82 (D. Ariz. 2000)(Where direct evidence is unavailable, circumstantial evidence must be "specific and substantial."). See also Godwin v. Hunt Wesson, Inc.,

3 - OPINION AND ORDER

150 F.3d 1217, 1222 (9th Cir.1998).

Plaintiff argues he presented direct evidence of defendant's improper retaliatory motivation and, in any event, defendant's argument that a higher standard is required for circumstantial evidence than for direct evidence has been called into question by the United States Supreme Court.  See Desert Palace, Inc. v. Costa, in which the Supreme Court stated "[w]e have often acknowledged the utility of circumstantial evidence in discrimination cases. . . .  The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'"  539 U.S. 90, 99 (2003), citing Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 508 n. 17 (1957).

I agree with plaintiff that direct evidence is not generally entitled to any greater weight than circumstantial evidence in deciding this motion, particularly since, at the request of both parties, I gave the Ninth Circuit Model Jury Instruction 1.6, requested by both parties: "The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence."

**Defendant's View of the Evidence.**

Defendant asserts plaintiff's evidence was comprised solely of the alleged statements and/or conduct by defendant's employees listed below, which was insufficient to prove an improper motivation for plaintiff's termination.

Foreman Scott Dorie.

4  -  OPINION AND ORDER

On one occasion, after plaintiff left his assigned post at the end of a day shift, Dorie asked him: "What kind of scam are you trying to pull here."

Defendant asserts Dorie did not participate in the decision to terminate plaintiff's employment and, therefore, his statement, even if made, cannot support a claim for retaliatory discharge.

Manager Mark Tougas.

(1)  In the lunch room, Tougas made a statement to employees gathered there regarding someone like plaintiff coming to work and "blowing people away."

Defendant argues the statement was probative only as to plaintiff's perceived or actual disability discrimination claim, which the jury rejected.

(2)  After plaintiff requested a day shift only, Tougas e-mailed the following message (Ex. 10) to his supervisor, Erik Muller:

> I feel Mr. Head will workout just fine on the day shift, however, I still don't like making promises I can't keep i.e. *never* having to work after dark, so I didn't promise that to Mr. Head.  What I did tell Matt was that I would do my best to keep him on days as long as I could without being unfair to others and if he absolutely had to work days without compromise perhaps he should entertain the idea of looking for other employment.

Defendant argues the e-mail is "ambivalent, ambiguous, and equivocal."  It reflects the efforts to accommodate plaintiff's request for day shift work only.  Moreover, the trial evidence was that Muller told Tougas to "make it happen," i.e., the day shift restriction, and that it did happen.  Tougas testified he told plaintiff he could not protect him if there was a layoff on dayshift because of plaintiff's lack of seniority.

5  -  OPINION AND ORDER

(3)  Tougas repeatedly asked plaintiff for doctors' notes substantiating plaintiff's work restrictions.

According to defendant, the undisputed evidence was that the requests for doctors' notes were made pursuant to company policy.

In summary, defendant argues the above evidence was all that was offered by plaintiff to support his retaliatory discharge claim and it was not enough to establish a triable issue.

On the other hand, defendant asserts it presented the following affirmative evidence that there was no discriminatory motive behind plaintiff's termination:

Plaintiff's work restrictions were always accommodated, and plaintiff never complained about defendant's treatment of him because of his restrictions, whether by using either the company's internal grievance procedure or the anonymous hot-line. There was no direct evidence that Tougas was upset over the work restrictions.

The decision to terminate plaintiff was made by Muller, who witnessed the equipment abuse, only after Muller received approval from the human resources department in Seattle.

Tougas investigated the circumstances surrounding the equipment abuse and found plaintiff was not assigned to work in the area where the loader got stuck, and was not directed there during the course of his work.

Violation of defendant's equipment abuse policy automatically resulted in termination for any employee.  Defendant presented evidence that other non-restricted

6  -  OPINION AND ORDER

employees were terminated for violating the same policy.

**Plaintiff's View of the Evidence.**

Plaintiff argues the following evidence supported the jury's verdict that a motivating factor in defendant's decision to terminate plaintiff was his request to work day shifts only as a reasonable accommodation for his bi-polar condition.

Plaintiff asked for a day shift because of family problems before he was diagnosed with bi-polar disorder. Tougas told him it would not be fair to other employees, but he allowed plaintiff time off work and did not harass, hassle, or discipline plaintiff for making the request.

After plaintiff returned to work following his hospitalization and diagnosis of bi-polar disorder, every interaction plaintiff had with Tougas was negative. When plaintiff requested the day shift, Tougas made requests for additional doctors' releases and more information on plaintiff's medications, which resulted in an unnecessary delay in plaintiff's return to work.

After plaintiff first requested the day shift, Tougas suggested plaintiff should "possibly" look for other work, and later, that plaintiff "probably" should look for work elsewhere. Tougas justified his statements based on seniority, <u>i.e.</u>, if there was a lay-off, plaintiff's lack of seniority on day shift might mean he would be "among the first to go." That justification was false, because Tougas' supervisor, Muller, testified seniority was based on date-of-hire, not the length of service on a particular shift.

After plaintiff returned to work from his hospitalization, Tougas assigned him to

7 - OPINION AND ORDER

the least desirable groundsman job of shoveling out the load out tunnel for eight-ten days. Other employees were not similarly treated. Plaintiff was reassigned to the favored loader job only because defendant was short-handed.

When plaintiff objected on two occasions to working a weekend swing shift and overtime hours, which would exceed his restrictions, defendant responded negatively. As to the swing shift, Tougas asked plaintiff, "What the hell hours can you work?" As to the overtime, foreman Dorie asked plaintiff, "What kind of scam are you trying to pull here?" Tougas also "went out of his way to examine plaintiff's timecards in an intimidating and threatening manner."

When Tougas terminated plaintiff, he deviated from company policy by not conducting an investigation, and not using the company's progressive discipline policy. Instead, Tougas falsely told his supervisor, Muller, and the human resources manager in Seattle that he had spoken with plaintiff and plaintiff's foreman, Scott Dorie, and had determined that plaintiff was not doing what he was assigned to do, and on his own volition, had used poor judgment to go the site where he got the loader stuck in the mud.

In addition, other employees got equipment stuck deep enough in the mud to violate defendant's equipment abuse policy but they were not fired. On two occasions in December 2001, Tougas suspended two other employees for equipment abuse pending further investigation. Tougas, however, fired plaintiff within hours of learning of

the alleged equipment abuse.

8 - OPINION AND ORDER

**Analysis.**

There was substantial evidence that defendant, through plant manager Tougas, had several motives for terminating plaintiff's employment. Undoubtedly, the recent implementation of an equipment abuse policy that provided for automatic termination based on a past history of costly mistakes by operators, was an important factor in Tougas' decision. Nevertheless, there was substantial evidence that the equipment abuse policy was, to say the least, unevenly applied. In addition, there was also substantial evidence of a degree of hostility by Tougas and plaintiff's foreman, Scott Dorie, after plaintiff requested a restriction to day shift work only. Finally, Tougas' haste in informing plaintiff of his termination within hours of the incident with the loader, before Tougas had any clear understanding of the scope of the damage, and before there had been any semblance of a fair investigation of the incident, could lead a reasonable juror to believe Tougas had other motives for terminating plaintiff's employment, foremost among them, his pronounced distaste for plaintiff's restriction to day shift work.

Based on all the evidence, I am not left with the definite and firm conviction that a mistake has been committed by the jury in this case. Defendant notes this case was previously tried to another jury, which returned a "quick" verdict for defendant. There, however, the jury was instructed defendant could be liable to plaintiff only if it terminated plaintiff "because of" his request for a reasonable accommodation. That instruction was found to erroneous by the Ninth Circuit, and in this trial, the jury was

instructed that the request for a reasonable accommodation needed only be a

9 - OPINION AND ORDER

"motivating factor" in defendant's termination decision. I find the weight of the evidence was sufficient to support a verdict in plaintiff's favor based on that instruction.

II.     **Exclusion of Evidence.**

Defendant argues it was unfairly prejudiced by its inability to present evidence to the jury that plaintiff caused such extensive damage to the loader that it could no longer be used.

The undisputed evidence at trial was that plaintiff stuck the loader in the mud in the late morning. Defendant terminated him in the early afternoon of the same day, immediately after lunch. The central issue was defendant's state of mind and knowledge at the time of termination. Defendant did not know the extent of the damage to the loader at that time or that the loader could not be used again.

Defendant argues its inability to present evidence of the ultimate disposition of the loader unduly prejudiced its ability to counter plaintiff's argument to the jury that this was simply a matter of a piece of equipment getting stuck in the mud. As noted, defendant points out that the first jury to hear this case returned a defense verdict quickly. Defendant surmises that if the jury had known the cost of the repair and the ultimate disposition of the loader, the verdict likely would have been the same as in the first case.

As noted above, the jury in the first trial reached its verdict based on a substantially different jury instruction. In addition, in this trial, defendant was permitted to present evidence of the potentially substantial damage to the loader and what it might

cost to repair it.

I conclude, therefore, that my previous ruling on motions <u>in limine</u> was correct, and defendant's proffered evidence was not probative as to defendant's motivation for terminating plaintiff. Defendant, therefore, therefore, was not prejudiced by its exclusion.

## **CONCLUSION**

For these reasons, the court **DENIES** defendant's motion for a new trial (doc. 169).

IT IS SO ORDERED

DATED this 20th day of March, 2006.

                                                      /s/ James A. Redden
                                                               James A. Redden
                                                Senior United States District Judge